O'CONNOR v. WEBBER et al.

(Supreme Court, Appellate Division, Second Department. May 29, 1914.)

1. MASTER AND SERVANT (§ 121*)—INJURIES TO SERVANT—DUTY OF MASTER—STATUTORY PROVISIONS.

Labor Law (Consol. Laws, c. 31) § 81, amended by Laws 1910, c. 106, requiring the guarding of machinery, and section 93, amended by Laws 1910, c. 107, prohibiting the employment of children under 16 to operate certain machines, construed in the light of the history of the legislation and of the entire Labor Law which imposes on manufacturers duties distinct from those imposed upon merchants, do not apply to all employers, but only to employers of labor in factories.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 228–231; Dec. Dig. § 121.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. Master and Servant (§ 121*)—Injuries to Servant—Duties of Master
—Statutory Provisions.

Under Labor Law (Consol. Laws, c. 31) § 2, providing that the term
"factory" includes any mill, workshop, or other manufacturing or busi-
ness establishment where one or more persons are employed at labor, the
term "business establishment" is limited to establishments of a charac-
ter similar to those enumerated, and does not include a butcher shop in
which was installed a meat-grinding machine driven by electric power.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 228–
231; Dec. Dig. § 121.*]

Appeal from Trial Term, Westchester County.

Action by William D. O'Connor against Richard Webber, Jr., and
another. Judgment for plaintiff, and defendants appeal. Reversed,
and new trial granted.

Argued before JENKS, P. J., and THOMAS, CARR, STAPLE-
TON, and PUTNAM, JJ.

Frank V. Johnson, of New York City, for appellants.
Sydney A. Syme, of Mt. Vernon, for respondent.

STAPLETON, J. The defendants appeal from a judgment en-
tered upon a verdict in favor of the plaintiff in the sum of $4,000, and
from an order denying a motion to set aside the verdict and for a new
trial.

The action was brought in behalf of the infant plaintiff, to recover
damages for the amputation of a portion of his right hand, which was
crushed in a chopping machine maintained and operated by the de-
fendants in their retail butcher shop and general store in the city of
Mt. Vernon.

At the time of the casualty the plaintiff was under 15 years of age,
and had been in defendants' service for about three weeks. Part of
his duties was to take meat from a conveying cable and run it through
a chopping machine operated by electricity. He did this about 10
times a day. As the different customers ordered chopped meat, the
butchers would call him and he would go and chop it. The meat was
fed into the machine through a funnel that was about four inches in
height, four or five inches in diamater at the top, and about two inches
in diameter at the bottom. The plaintiff's method was to feed the meat
into the funnel with his left hand, and then to push it down into the
machine with a stick that he held in his right. This stick, after being
used a little while, would become greasy. After the meat left the
machine the first time, it was put through a second time to make it of
the proper fineness. At the time of the casualty the plaintiff was in the
act of chopping a pound and a half of meat for which he had received
an order. He thus describes what occurred:

"The butcher sent me to the meat-chopping machine to grind some meat,
and I went there and was putting it through the second time when the stick
hit the cogwheel, and my hand slipped down into the machine."

By "cogwheel" he meant the revolving worm. According to plain-
tiff's version, when the stick hit the worm it pulled away from him,
and his hand went down into the machine.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

[1] The case was submitted to the jury upon the theory that defendants' negligence could be established by proof of failure on their part to discharge statutory duties imposed upon an employer of labor. There are two sections of the Labor Law (chapter 36, Laws of 1909, constituting chapter 31 of the Consolidated Laws, as amended by chapter 299 of the Laws of 1909 and chapters 106 and 107 of the Laws of 1910), which the trial court held the jury should consider upon the issue of negligence. One is section 81, which, so far as applicable, reads:

"Protection of Employés Operating Machinery. The owner or person in charge of a factory where machinery is used, shall provide, in the discretion of the commissioner of labor, belt shifters or other mechanical contrivances for the purpose of throwing on or off belts on pulleys. Whenever practicable, all machinery shall be provided with loose pulleys. All vats, pans, saws, planers, cogs, gearing, belting, shafting, set screws and machinery, of every description shall be properly guarded."

The other is section 93, which, so far as applicable, reads:

"Prohibited Employment of Women and Children. No child under the age of sixteen years shall be employed or permitted to work in operating or assisting in operating any of the following machines: Circular or band saws, wood shapers, wood jointers, planers, sandpaper or wood polishing machinery; picker machines or machines used in picking wool, cotton, hair or any upholstering material; paper lace machines; burnishing machines in any tannery or leather manufactory; job or cylinder printing presses having motive power other than foot; wood turning or boring machinery; * * * stamping machines used in sheet metal and tinware manufacturing or in washer and nut factories; machines used in making corrugating rolls; steam boilers; dough brakes or cracker machinery of any description; wire or iron straightening machinery; rolling mill machinery, power punches or shears; washing, grinding or mixing machinery, calender rolls in rubber manufacturing; or laundering machinery."

The duties imposed by the written law quoted are not imposed upon every employer of labor. It is only an employer of labor in a factory who is subject to the mandate of the provisions upon which the plaintiff rests. This conclusion is manifest from the history of the legislation (See notes relating to these sections. Birdseye's Cumming & Gilbert's Consolidated Laws of New York), and from an examination of the entire Labor Law, which, in a separate article, imposes upon employers engaged in manufacture duties which are distinct from those which, by its other articles, are imposed upon employers engaged in purely mercantile and other nonmanufacturing enterprises. The quoted provisions are incorporated in the article of the present Labor Law relating to factories. The proposition has the support of authority. Shannahan v. Empire Engineering Corp., 204 N. Y. 543, 98 N. E. 9, 44 L. R. A. (N. S.) 1185. See Poole v. American Linseed Co., 119 App. Div. 136, 103 N. Y. Supp. 1047.

[2] A fundamental inquiry, therefore, is: Was the defendants' place of business a factory within the meaning of that word as used in the Labor Law? The trial court left that question to the jury, to be determined as one of fact. Of course it is a question of law. If the jury reached the correct result, no complaint may be made. The question occurs, Was the statute properly construed and legally applied?

The Labor Law, in section 2, amplifies the ordinary definition of the word "factory":

"The term 'factory,' when used in this chapter, shall be construed to include also any mill, workshop, or other manufacturing or business establishment where one or more persons are employed at labor."

In a case in which an attempt was made to hold the owner of a tugboat liable to his injured employé for employing him while under the age prohibited by the statute, and for a failure properly to guard a shaft, the court said:

"We think that a tugboat is neither a factory nor a 'mill, workshop or other manufacturing or business establishment,' within the meaning of the Labor Law, even when liberally construed for the purpose of protecting workmen, and especially minors employed where machinery is used. A factory is a structure or plant where something is made or manufactured from raw or partly wrought materials into forms suitable for use. This is the primary definition which was extended by the statute so as to include any 'mill, workshop or other manufacturing or business establishment where one or more persons are employed at labor.' The term 'business establishment' as thus used means one resembling a mill, workshop, or other manufacturing establishment. It is confined to things of the same general character as those named. It does not mean all business establishments where one or more persons are employed at labor, but only those engaged, to some extent at least, in manufacturing of some kind. Obviously it does not include a hotel, grocery, store, and many other business establishments where one or more persons are employed at labor. A towboat navigating a river cannot be held an 'establishment' of any kind with trifling with the plain meaning of the word. The Legislature has not provided that all shafting and set screws wherever used shall be properly guarded, but only such as are used in factories or establishments where business in the nature of manufacturing is carried on through the operation of machinery. The Labor Law should be read in the natural way so as to get at the exact meaning without forcing it in any direction in order to meet the needs of either side in a particular case." Shannahan v. Empire Engineering Corp., ut supra.

It would be unduly stretching the meaning of the terms of the Labor Law to hold that by installing and operating, by electric force, a mechanical device for chopping meat for his customers, the owner of a butcher shop converted his shop into a factory, and thereby made himself subject to the provisions of the Labor Law governing the employment of labor in a factory. In Schapp v. Bloomer, 181 N. Y. 125, 128, 73 N. E. 563, 564, the court, speaking of the Labor Law, said:

"In construing this statute we should endeavor to ascertain its fair and reasonable meaning, avoiding a construction which either extends or limits its provisions beyond that which was evidently intended."

There was no other ground of actionable negligence submitted to the jury for its consideration, and the verdict has no legal basis for its existence.

The judgment and order should be reversed, and a new trial granted, costs to abide the event. All concur.